DOUGLAS v. FLEMING, Administrator, Office of Temporary Controls.

No. 3427.

Circuit Court of Appeals, Tenth Circuit. May 19, 1947.

Rehearing Denied Aug. 15, 1947.

A. R. Swank and Guy L. Horton, both of Stillwater, Okl. (Swank & Swank, of Stillwater, Okl., on the brief), for appellant.

Leanora S. Gruber, Sp. App. Atty., of New York City (William E. Remy, David London, and Albert M. Dreyer, all of Washington, D. C., and Leonard M. Cox, of Dallas, Tex., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The Administrator brought this action against Douglas, pursuant to §§ 205(a), (c), and (e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, §§ 901 et seq., for statutory damages and injunction. From a judgment in favor of the Administrator, Douglas has appealed.

Douglas operated a retail grocery store and meat market at Stillwater, Oklahoma, in which he sold food items, including poultry, to ultimate consumers. In a small building directly back of, but separate from, his retail store, he received, killed, plucked, and dressed poultry purchased from farmers. Much of the poultry received, killed, plucked, and dressed in the separate building was sold over the meat counter of the retail store.

Less than ten per centum of the sales made by Douglas were to institutional, industrial, or commercial users. Douglas was a retailer who bought and resold food products, generally without changing their form, and for the most part to ultimate consumers who were not commercial, industrial, or institutional users. Douglas operated an independent store. His annual gross sales were in excess of $50,000, and less than $250,000. It is conceded that, except as to certain poultry sales, the store operated by Douglas was a Group 2 store, covered by Maximum Price Regulation 423.[1]

During the period between January 23, 1945, and July 16, 1945, Douglas sold and delivered from such separate building to the Meat Supply Unit of the Oklahoma Agricultural and Mechanical College at Stillwater, Oklahoma, 28,152 pounds of live hens and fryers at prices which were $1,867.89 in excess of the ceiling prices established, for sales at wholesale, by Second Revised Maximum Price Regulation 269.[2] The items of poultry in each sale exceeded five in number.

The court concluded that the sales to the College were covered by 269, supra, and awarded judgment for $1,867.89, plus $100. That part of the judgment alone is here challenged.

The exact theory upon which the Administrator predicated his charge that Douglas sold the poultry to the College at prices in excess of ceiling prices fixed by 269, supra, is not clear. A price specialist in the Office of Price Administration, called as a witness by the Administrator, testified that the sales to the College were either retail sales, or sales by a processor.

However, in his complaint, the Administrator alleged that Douglas was engaged in the purchase and sale of poultry at wholesale, and apparently the trial court adopted that theory.

The pertinent regulations follow.

Section 1.1 of 269, supra, reads:

*"What this regulation covers.* This regulation establishes maximum prices at which live and processed poultry items shall be sold, purchased or delivered."

Section 1.4 of 269, supra, in part provides:

" * * * The following sales are exempt from the provisions of this regulation: * * * .

---

"(g) All sales at retail except those specified in Section 7.3 of this regulation. Sales at retail shall be determined in accordance with the provisions of Maximum Price Regulation No. 422, entitled 'Ceiling Prices of Certain Foods Sold at Retail in Group 3 and Group 4 Stores', and Maximum Price Regulation No. 423, entitled 'Ceiling Prices of Certain Foods sold at Retail in Independent Stores doing an Annual Business of Less than $200,000 (Group 1 and Group 2 Stores).'"

Section 3.5, the definition section of 269, supra, in part provides:

"Definitions—(a) Explanation. This section does not contain all the terms defined in this regulation. Other terms are defined elsewhere in this regulation, adjacent to the subject matter to which they pertain, for the purposes of clarity and coherence.

"(1) Applicability of definitions contained in the Emergency Price Control Act of 1942, as amended, and the General Maximum Price Regulation, as amended. Unless the context requires otherwise, the definitions of section 302 of the Emergency Price Control Act of 1942, as amended, and of the General Maximum Price Regulation, as amended, shall apply to the terms used in this regulation."

Section 1499.20(o) and (p) of General Maximum Price Regulation, as amended by Amendment 7,[3] reads:

"(o) 'Sale at retail' or 'selling at retail' means a sale or selling to an ultimate consumer other than an industrial or commercial user, except that (1) for the purpose of § 1499.3 of this General Maximum Price Regulation a 'sale at retail' shall not include any sale by a producer, manufacturer, or fabricator of any commodity produced, manufactured, or fabricated by him, and (2) for the purpose of §§ 1499.11 and 1499.13 of this General Maximum Price Regulation a 'sale at retail' shall not include any sale to the United States, any other government or any of its political subdivisions, any religious, educational or charitable institution, any institution for the sick, deaf, blind, disabled, aged or insane, or any school, hospital, library or any agency of any of the foregoing.[4]

"(p) 'Sale at wholesale' means a sale by a person who buys a commodity and resells it, without substantially changing its form, to any person other than the ultimate consumer, except that for the purposes of § 1499.3 of this General Maximum Price Regulation a sale at wholesale shall include any sale by such person to an industrial or commercial user."

Maximum Price Regulation, Art. 1, § 2,[5] reads as follows:

"How you find out whether your store is covered by this regulation and what group it is in—(a) What stores are covered. Your store is covered by this regulation if it is a Group 1 or 2 store as defined below and if you are a retailer who buys and resells food products, generally without materially changing their form, for the most part to ultimate consumers who are not commercial, industrial or institutional users. However, this regulation shall not apply to 'retail route sellers' or 'health food stores' (both defined in Section 25) or to automatic vending machines or farmers selling produce grown on their own farms."

Section 7.3 of 269, supra, provides:

"Maximum prices for poultry items when sold at retail by any type of seller other than a retailer covered by Maximum Price Regulation 422 or 423. (a) The maximum price for the sale and delivery of poultry items at retail, that is, in quantities of 5 or less poultry items, except turkeys, or 3 or less turkeys sold to an ultimate consumer, other than a commercial, institutional, industrial or governmental user, by any type of seller other than a retailer covered by Maximum Price Regulations 422 or 423, shall be calculated as follows: * * *"

Section 6.2(d), Art. VI of 269, supra, in part reads:

"Wholesaler. No person shall be considered a wholesaler within the meaning of

---

[3] 7 Fed.Reg., June 23, 1942, pp. 4659, 4660.

[4] Douglas was not a producer, manufacturer, or fabricator. Section 1499.11 refers to record keeping and § 1499.13 refers to cost of living commodities in which poultry is not included. Therefore, the exceptions in § 1499.20(o) have no pertinency here.

[5] 8 Fed.Reg., July 9, 1943, p. 9407.

this regulation and no person shall charge any of the wholesale markups established by this regulation unless he possesses all of the following characteristics:"

It then sets forth, in detail, eight requirements to constitute a poultry dealer a "wholesaler" within the meaning of the regulation.

The Administrator failed to prove that Douglas possessed all of such characteristics. Indeed, it is fairly apparent that he did not possess certain of them, for example, the one relating to warehouse space defined in § 6.2(d) (3). The price specialist referred to above testified that in his opinion Douglas was not a wholesaler within the meaning of § 6.2(d), supra.

Regulation 269, supra, defines a wholesaler. It does not define sales at wholesale or sales at retail. However, by express reference, it incorporates the definition provisions of General Maximum Price Regulation, as amended. We must, therefore, look to § 1499.20(o) and (p), supra, to ascertain what are sales at wholesale and sales at retail.

■ The sales to the College were not sales at wholesale within the meaning of § 1499.20(o), supra, because the College did not resell the fowls to any person other than an ultimate consumer.

The College was neither an industrial nor commercial user. The sales to the College were not sales by Douglas as a producer, manufacturer, or fabricator of a commodity produced, manufactured, or fabricated by him. The College was the ultimate consumer of the fowls sold to it by Douglas. It would, therefore, seem that the sales to the College were within § 1499.20(o), supra, and were sales at retail.

It is urged that since each sale to the College embraced more than five poultry items, such sales must be regarded as sales at wholesale, by virtue of the provisions of § 7.3(a), supra. The purpose of § 7.3(a), supra, was not to define sales at wholesale. Rather, it was to cover sales and deliveries of poultry items by a limited type of seller, namely, those retail sellers of poultry not covered by Maximum Price Regulations 422 and 423.

It is not clear that the type of sellers covered by § 7.3(a), supra, may not make retail sales of more than five items to a commercial, institutional, industrial, or governmental user if they are ultimate consumers of the poultry. While they may not make retail sales of more than five items of poultry to ordinary purchasers as ultimate consumers, the language of the Regulation is subject to the construction that the number of items limitation applies only to an ordinary ultimate consumer and not to a commercial, institutional, industrial, or governmental user.

Be that as it may, no regulation prescribed a number of items limitation for sales of poultry at retail by a retailer covered by Maximum Price Regulations 422 or 423, supra. Since Douglas was a retailer who bought and sold food products, including poultry, generally without materially changing their form, to ultimate consumers who were not commercial, industrial, or institutional users, he was a retailer covered by Maximum Price Regulation 423, and was expressly excluded from § 7.3(a), supra, and was not subject to any limitations thereby imposed.

■ Finally, it is urged that as to the poultry items, sales made by Douglas were not within Maximum Price Regulation 423. In other words, that the sales of poultry to the College should be carved out and treated as something apart from his general sales concededly covered by Maximum Price Regulation 423. With this we cannot agree. Maximum Price Regulation 423 applies to all his sales, since he was a retailer who bought and sold food products, generally without materially changing their form, for the most part to ultimate consumers who were not commercial, industrial, or institutional users.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

### On Petition for Rehearing.

PER CURIAM.

On petition for rehearing, counsel for the United States urge that the Oklahoma Agricultural and Mechanical College was a

commercial user of the poultry purchased by it and that we erred in holding that it was an ultimate consumer. If the College was not the ultimate consumer, it was an institutional, rather than a commercial, user, and it did not purchase the poultry for resale other than to an ultimate consumer. Therefore, the sales were not at wholesale under § 1499.20(p) of General Maximum Price Regulation. The same result follows, whether the College be regarded as an institutional user or an ultimate consumer.

Moreover, we adhere to the view that the sales were covered by Maximum Price Regulation 423.

The petition for rehearing is denied.